**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NAVIGATORS INSURANCE COMPANY<br>One Penn Plaza, 32nd Floor<br>New York, NY 10119, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No.: _____ |
| BAYLOR & JACKSON, PLLC<br>2607 24th Street NW, Suite 1<br>Washington, DC 20008; | ) ) ) ) | |
| BRYNEE K. BAYLOR,<br>13121 Riviera Terrace<br>Silver Spring, MD 20904; | ) ) ) ) | |
| and | ) ) | |
| DAWN R. JACKSON,<br>5705 Hillmeade Road<br>Bowie, MD 20720, | ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Navigators Insurance Company ("Navigators"), for its Complaint against Baylor & Jackson, PLLC (the "Firm"), Brynee K. Baylor ("Baylor") and Dawn R. Jackson ("Jackson"), alleges on knowledge, information and belief as follows:

**INTRODUCTION**

1.      Navigators issued Lawyers Professional Liability Policy No. PH10BBP002505NV to the Firm for the policy period of August 1, 2010 to August 1, 2011 (the "Policy"). A true and correct copy of the Policy, without the application, is attached as Exhibit A.

2.      Navigators brings this action for a judicial declaration that the Policy does not provide coverage for six lawsuits (collectively, the "Underlying Actions") captioned:

(i)     *Latitude 30 Group, LLC v. Cornerstone Lenders Group, Inc., et al.*, No. 2011-CA-002493 (Cir. Ct., Duval County, Fla.) (the "*Latitude 30* action");

(ii)    *Princeton Developments, LLC v. Brynee K. Baylor, et al.*, No. 11-cv-04471 (N.D. Cal.) (the "*Princeton Developments* action");

(iii)   *Kuman Banque, LLC v. Brynee K. Baylor, et al.*, No. 11-cv-04472 (N.D. Cal.) (the "*Kuman Banque* action");

(iv)    *World Class Construction Management Group, LLC, et al. v. Brynee K. Baylor, et al.*, No. 1:11-cv-1682 (D.D.C.) (the "*World Class* action");

(v)     *Sheldon Arpad, et al. v. Brynee K. Baylor, et al.*, No. 1:12-cv-00069 (D.D.C.) (the "*Arpad* action"); and

(vi)    *SEC v. The Milan Group, Inc., et al.*, No. 1:11-cv-2132 (D.D.C.) (the "SEC action").

3.      As shown in more detail below, coverage for the Underlying Actions is barred by a Policy provision that states Navigators

> will not defend or pay any **claim** . . . [b]ased on or arising out of the loss or destruction of or diminution in the value of any asset in the **Insured's** care, custody or control or out of the misappropriation of, or failure to give an account of, any asset in the **Insured's** care, custody or control, including the commingling of funds.

Policy, Section IV.K ("Exclusion K").[1]

4.      Each of the Underlying Actions is based on or arises out of allegations that one of the Firm's partners misappropriated or otherwise improperly disbursed and lost funds that had been deposited into the Firm's trust account.  Therefore, the Exclusion K applies to bar coverage for the Underlying Actions in their entirety.

5.      Navigators also seeks a determination that the SEC action, as to Jackson, seeks only the disgorgement of allegedly ill-gotten gains, a form of relief that does not constitute

---

[1] Terms in bold type are defined in the Policy.

**damages** as that term is defined by the Policy and that is not insurable.  As a consequence, there is no defense or indemnity coverage for the SEC action as to Jackson.

6.       Navigators also seeks a declaration that it is entitled to recover any **claim expenses** that it has paid or will pay on behalf of the Firm and Baylor in connection with the *Latitude 30* action, and a money judgment in that amount.

## JURISDICTION AND VENUE

7.       The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1), 2201 and 2202.  There is complete diversity of citizenship between plaintiff and each of the named defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.       An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties concerning their respective rights, duties and obligations under the Policy.

9.       Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims at issue in this action occurred in this district.

## PARTIES

10.      Plaintiff Navigators is a New York corporation with its principal place of business in New York, New York.

11.      Defendant Firm is a District of Columbia professional limited liability company with its principal place of business in the District of Columbia.

12.      Defendant Baylor is a citizen of Maryland and was a partner in the Firm at all times relevant to this action.

13.      Defendant Jackson is a citizen of Maryland and was a partner in the Firm at all times relevant to this action.

## FACTUAL ALLEGATIONS

**The Policy**

14.     Navigators issued the Policy to the Firm for the claims made and reported **policy period** of August 1, 2010 to August 1, 2011.  Ex. A, Policy, Declarations Item 2 & Section V.B.

15.     Subject to all applicable terms, conditions and exclusions, the Policy provides that Navigators will pay on behalf of the **Insured**

> all sums in excess of the retention that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period** or the **extended reporting period** (if applicable), by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or by any person for whom the **Insured** is legally liable[.]

Ex. A, Policy, Section I.A.

16.     The Firm is designated in Item 1 of the Declarations as the **Named Insured**.  Ex. A, Policy, Declarations Item 1.

17.     **Insured** is defined to include any past, present or future partner or employee of the **Named Insured**, but solely with respect to **professional services** rendered on behalf of the **Named Insured**.  Ex. A, Policy, Section III.H.

18.     **Claim** means "a demand for money or services, naming the **Insured,** arising out of an act or omission in the performance of **professional services**."  Ex. A, Policy, Section III.B.

19.     Under the Policy "[a]ll **related claims** made against any **Insured** shall be considered a single **claim**, first made when the earliest of the **related claims** was first made and reported to [Navigators]."  Ex. A, Policy, Section II.F.  As defined, **related claims** are **claims** arising out of **related acts or omissions**, which means "acts or omissions in the rendering of

**professional services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, even, advice or decision." Ex. A, Policy, Section III.P & Q.

20.     The term **damages** is defined in the Policy as "any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Company's** written consent," but does not include certain specified items. Ex. A, Policy, Section III.E.

21.     The Policy defines **claim expenses** to include the reasonable and necessary fees, costs and expenses resulting from the defense of a **claim**. Ex. A, Policy, Section III.C.

22.     Pursuant to the terms of the Policy, as set forth in Exclusion K, there is no coverage for **damages** or **claim expenses** incurred with respect to any **claim**:

> [b]ased on or arising out of the loss or destruction of or diminution in the value of any asset in the **Insured's** care, custody or control or out of the misappropriation of, or failure to give an account of, any asset in the **Insured's** care, custody or control, including the commingling of funds[.]

Ex. A, Policy, Section IV.K.

**The Underlying Actions**

23.     The Underlying Actions all arise out of the Firm's representation of the Milan Group, LLC ("Milan") in connection with Milan's purported efforts to raise funds from third parties to either acquire large loans on their behalf, or to "leverage" certain "instruments" that would allegedly yield high returns for the investors. Each of the complaints filed in the Underlying Actions alleges that monies were deposited into the Firm's trust account and subsequently misappropriated or otherwise improperly removed and lost by Baylor.

**The *Latitude* 30 Action**

24.     Latitude 30 Group, LLC ("Latitude 30") filed its complaint in the *Latitude 30* action in Florida state court on March 24, 2011 and named Baylor, Milan and Cornerstone

Lenders Group, Inc. ("Cornerstone") as defendants.  A true and correct copy of the Latitude 30 Complaint is attached as Exhibit B.

25.     On December 19, 2011, Latitude 30 amended its complaint to name the Firm, Frank Lorenzo ("Lorenzo"), Lisa Logan, Joseph Venezia and Vincent Gerardi as additional defendants.  A true and correct copy of the "Latitude 30 FAC" is attached as Exhibit C.

26.     The Latitude 30 FAC alleges that Baylor, the Firm and the other defendants induced Latitude 30 to participate in a "fictitious" loan arrangement that resulted in a "stolen" escrow deposit of $775,000.

27.     To secure funding on behalf of Latitude 30, defendant Cornerstone allegedly entered into an escrow agreement with Milan and the Firm in which Cornerstone agreed to deposit $775,000 in funds provided by Latitude 30 into the Firm's trust account.  In return, Milan purportedly promised to "monetize" a $20 million "leased instrument" to acquire a $600 million "instrument" to fund Cornerstone's participation in a "private placement platform." Cornerstone, in turn, allegedly promised to provide an $80 million loan to Latitude 30.

28.     The Latitude 30 FAC avers that the escrow agreement required Cornerstone to immediately return Latitude 30's $775,000 deposit unless it delivered the promised $80 million loan within 45 days.  After 70 days passed without the $80 million loan being delivered, Latitude 30 allegedly demanded a full return of its $775,000 from Baylor.  Contrary to the terms of the escrow agreement, Baylor allegedly did not return Latitude 30's funds.

29.     The Latitude 30 FAC asserts causes of action against the Firm and Baylor for:  (i) fraud in the inducement or, alternatively, fraudulent misrepresentation; (ii) negligent misrepresentation; and (iii) violations of Florida's Racketeering Influence and Corruption Act.

**The *Princeton Developments* Action**

30.     Princeton Developments, LLC ("Princeton Developments") filed suit against the Firm and Baylor, as well as Milan, Lorenzo, Syed Ali Abbas, GPH Holdings and Patrick Lewis, in federal court in California on September 8, 2011.  A true and correct copy of the "Princeton Developments Complaint" is attached as Exhibit D.

31.     The Princeton Developments Complaint alleges that the defendants engaged in an "elaborate scheme" to induce Princeton Developments to release $223,000 into the Firm's custody "so that said funds could be misappropriated."  Specifically, Princeton Developments contends that the defendants represented that, in return for depositing $325,000 into the Firm's trust account, Princeton Developments would receive a $10 million "leased instrument" that defendants would "monetize" to acquire a $150 million instrument to fund Princeton Developments' participation in a "private placement platform."  Pursuant to the terms of a written agreement executed by the parties, Baylor allegedly promised that she would release the deposit from the Firm's trust account only upon Princeton Developments' express request.

32.     After Princeton Developments deposited $223,000 into the Firm's trust account in reliance on these representations, Baylor allegedly violated the agreement by ignoring Princeton Developments' demands for the return of its deposit.  Rather, the $223,000 allegedly "end[ed] up in the pockets" of the defendants while Princeton Developments "receive[ed] nothing."

33.     The Princeton Developments Complaint asserts causes of action against Baylor and the Firm for:  (i) fraud; (ii) breach of written contract; (iii) attorney malpractice; and (iv) money had and received.

### The *Kuman Banque* Action

34.    Kuman Banque, LLC ("Kuman Banque") filed suit against the Firm and Baylor, as well as Milan and Lorenzo, in federal court in California on September 8, 2011. A true and correct copy of the "Kuman Banque Complaint" is attached as Exhibit E.

35.    According to the Kuman Banque Complaint, defendants carried out an "elaborate scheme" to induce Kuman Banque to release $250,000 into the Firm's trust fund "so that said funds could be misappropriated." The defendants purportedly promised Kuman Banque that its $325,000 deposit would be used to acquire and "monetize" a $10 million "leased instrument" that would yield a $150 million "instrument" to fund Kuman Banque's participation in a "private placement platform." Pursuant to a written agreement, Baylor allegedly promised that she would release the deposit from the Firm's trust account only at Kuman Banque's request.

36.    In reliance on these representations, Kuman Banque contends that it deposited $223,000 in the Firm's trust account. Baylor then allegedly violated the escrow agreement by ignoring Kuman Banque's demands that its funds be returned. The Kuman Banque Complaint thus contends that Kuman Banque "receive[ed] nothing" from the transaction as its $223,000 deposit "end[ed] up in the pockets" of Baylor and the Firm.

37.    The Kuman Banque Complaint asserts claims against Baylor and the Firm for: (i) fraud; (ii) breach of contract; (iii) attorney malpractice; and (iv) money had and received.

### The *World Class* Action

38.    World Class Construction Management, LLC, and William Barrett, Jr. (together, "World Class") filed suit against the Firm, Baylor and William Youngblood ("Youngblood") in federal court in the District of Columbia on September 16, 2011. A true and correct copy of the "World Class Complaint" is attached as Exhibit F.

39.     On December 12, 2011, World Class amended its complaint to dismiss Youngblood as a defendant.  A true and correct copy of the "World Class FAC" is attached as Exhibit G.

40.     The crux of the World Class FAC is that defendants designed an "elaborate fraudulent scheme" to deprive World Class of $130,000, which Baylor used "for her own personal use and discretion."  Specifically, World Class alleges that it agreed to loan $130,000 to Youngblood, who supposedly needed a $500,000 deposit to secure a $20 million loan for a construction project.  World Class contends that it entered into an escrow agreement and deposited $130,000 into the Firm's trust account based on Baylor's representations that the deposit would be returned after Youngblood's loan was approved or if the funding was delayed.

41.     The World Class FAC alleges that Baylor and Milan made repeated promises that the money would arrive shortly, but that Youngblood's loan was never funded.  Although the agreement required the return of World Class's funds, Baylor allegedly withdrew the $130,000 deposit without authorization, disbursing portions to Milan and using the remainder for personal purposes.

42.     The World Class FAC asserts causes of action for:  (i) breach of contract; (ii) breach of fiduciary duty; (iii) negligence; and (iv) fraud.

### The *Arpad* Action

43.     Sheldon Arpad and Diana Arpad (together, the "Arpads") filed suit against the Firm and Baylor in federal court in the District of Columbia on January 17, 2012.  A true and correct copy of the "Arpad Complaint" is attached as Exhibit H.

44.     The thrust of the Arpad Complaint is that Baylor and the Firm "defrauded" the Arpads by implementing an "elaborate" scheme involving the Firm's trust account to deprive

them of $140,000.  The Arpads allegedly agreed to loan $140,000 to Youngblood, who needed a

$500,000 deposit to secure a $20 million construction loan, in exchange for a 100% return on

their investment (*i.e.*, $280,000) within less than 40 days.

45.     Based on this promise, the Arpads executed an escrow agreement with the Firm

and deposited $140,000 into the Firm's trust account.  The terms of the agreement allegedly

provided that the Arpad's money would be disbursed only after Youngblood's loan had been

funded; otherwise, the $140,000 would be returned to the Arpads.  Although Youngblood's loan

was never funded, the Arpads contend that Baylor ignored their demands to return the deposit

and instead withdrew the funds without authorization, disbursing a portion to Milan and using

the rest for personal purposes.

46.     The Arpad Complaint asserts causes of action for:  (1) breach of contract; (2)

breach of fiduciary duty; (3) negligence; and (4) fraud.

**The SEC Action**

47.     The Securities and Exchange Commission ("SEC") filed its action on November

30, 2011 in federal court in the District of Columbia.  The complaint in the SEC action names as

defendants Baylor and the Firm, as well as Milan and Lorenzo.  The SEC also identifies nine

"relief" defendants, including Jackson.  A true and correct copy of  the "SEC Complaint" is

attached as Exhibit I.

48.     The SEC Complaint alleges that Baylor, the Firm, Lorenzo and Milan perpetrated

a fraudulent scheme in which investors were lured into depositing monies into the Firm's trust

account based on promises of extraordinary returns.  The scheme allegedly used deliberately

complex and vague terms in an effort to confuse investors.  Baylor's alleged role in this scheme

was to identify herself as counsel for Milan and to convince the investors of the legitimacy of the transactions by executing written escrow agreements on behalf of the Firm.

49.     Pursuant to the scheme, Baylor—along with the other defendants—allegedly induced a minimum of seven investors to deposit at least $1.65 million into the Firm's trust account and then misappropriated the monies for the defendants' own use and to make payments to the relief defendants.

50.     With respect to Baylor and the Firm, the SEC Complaint alleges violations of the Securities Act of 1933 and the Securities Exchange Act of 1934.  The SEC seeks injunctive relief, the disgorgement of ill-gotten gains, civil monetary penalties and other equitable and legal relief as appropriate.

51.     The SEC Complaint further contends that Jackson "ha[s] no legitimate claim" to approximately $153,000 she received from the named defendants because she "did not provide any lawful services or products" in return for the funds.  The SEC seeks from Jackson the disgorgement of "all ill-gotten gains received or benefits in any form derived from the illegal conduct" allegedly committed by the named defendants.

**The Insureds' Requests for Coverage under the Policy**

52.     Baylor tendered the *Latitude 30* action to Navigators for coverage under the Policy on or about May 12, 2011.  On August 12, 2011, Navigators advised the **Insureds** that it was reserving all of its rights and defenses to coverage under the Policy and applicable law, including but not limited to its right to deny coverage for the *Latitude 30* action pursuant to (i) the definition of **damages**, *see* Ex. A, Policy, Section III.E; (ii) the dishonesty exclusion, *see* Ex. A, Policy, Section IV.A; and (iii) the Misappropriation Exclusion.  Navigators agreed to provide a defense in the *Latitude 30* action, subject to a full and complete reservation of its

rights, including the right to obtain reimbursement for all sums expended in defending the
*Latitude 30* action if it was later determined that the Policy afforded no coverage for the **claim**.

53.     In December 2011 and January 2012, the **Insureds** tendered the *Princeton
Developments* action, the *Kuman Banque* action, the *World Class* action, the *Arpad* action and
the SEC action to Navigators for coverage under the Policy.

54.     By letter dated February 3, 2012, Navigators advised the **Insureds** that the
Underlying Actions, to the extent that they arise out of or involve **related acts or omissions**,
constitute **related claims** under the Policy, the earliest one made and reported being the *Latitude
30* action, which was made and reported during the **policy period**.  Accordingly, and while
reserving the right to take a different position should additional information develop supporting a
different conclusion, Navigators further advised that the Underlying Actions may be treated as a
single **claim** first made and reported during the **policy period** of the Policy.

55.     In its correspondence of February 3, 2012, Navigators also advised the **Insureds**
that Exclusion K bars coverage under the Policy for each of the Underlying Action in their
entirety and that, as a result, Navigators would be withdrawing its defense of the *Latitude 30*
action, effective forty-five (45) days from the date of its letter.

56.     In addition, Navigators' February 3, 2012 letter advised the **Insureds** that other
provisions of the Policy could limit or bar coverage for the Underlying Action, including but not
limited to:  (i) the prior knowledge condition precedent, *see* Ex. A, Policy, Section I.A.; (ii) the
definition of **professional services**, *see* Ex. A, Policy, Section III.O.; (iii) the definition of
**damages**, *see* Ex. A, Policy, Section III.E; (iv) the dishonesty exclusion, *see* Ex. A, Policy,
Section IV.A; and (v) the contract exclusion, *see* Ex. A, Policy, Section IV.J.

57.     Navigators has further advised the **Insureds** that it continues to evaluate the information provided by the Firm in connection with the procurement of the Policy.  To the extent that Navigators' ongoing investigation reveals that the Firm's responses to questions on the applications for the Policy were false and material, Navigators has reserved its right to rescind the Policy and seek a judicial declaration that the Policy is void *ab initio.*

### COUNT I
### (AS TO ALL DEFENDANTS)

**Declaration of No Coverage for the Underlying Actions**
**Based on Exclusion K**

58.     Navigators realleges and incorporates by reference the allegations of paragraphs 1 through 57 as if fully set forth in this Count I.

59.     Exclusion K expressly excludes coverage for any **claim**

[b]ased on or arising out of the loss or destruction of or diminution in the value of any asset in the **Insured's** care, custody or control or out of the misappropriation of, or failure to give an account of, any asset in the **Insured's** care, custody or control, including the commingling of funds[.]

Ex. A, Policy, Section IV.K.

60.     As set forth in each of the complaints in the Underlying Actions, Baylor allegedly misappropriated or otherwise lost funds that were deposited into the Firm's trust account by investors and other third parties.

61.     The Underlying Actions thus are each based on or arising out of the "loss" or "misappropriation" of "assets" entrusted to the "care, custody or control" of the Firm, a **Named Insured** under the Policy.  As such, Exclusion K bars coverage for the Underlying Actions in their entirety.

62.     Navigators, therefore, is entitled to a declaration that the Policy affords no coverage for, and there is no duty to defend, any of the Underlying Actions.

## COUNT II
## (AS TO JACKSON)

### Declaration of No Coverage for Jackson as to the SEC Action
### Based on the Definition of Damages

63.     Navigators realleges and incorporates by reference the allegations of paragraphs 1 through 62 as if fully set forth in this Count II.

64.     As set forth in the insuring agreement, the Policy affords specified coverage only for "sums in excess of the retention that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses**." Ex. A, Policy, Section I.A.

65.     The Policy defines **damages** in relevant part as "any *compensatory* sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Company's** written consent." Ex. A, Policy, Section III.E. (emphasis added).

66.     The SEC action seeks from Jackson the disgorgement of ill-gotten gains, a form of relief that is restitutionary rather than compensatory in nature and thus does not constitute **damages** under the Policy.   Additionally, the disgorgement of ill-gotten gains is not an insurable loss as a matter of law.

67.     Navigators, therefore, is entitled to a declaration that the Policy affords no defense or indemnity coverage for Jackson in connection with the SEC action.

## COUNT III
## (AS TO THE FIRM AND BAYLOR)

### For Recovery of Claim Expenses Advanced to or on Behalf of Baylor and the Firm
### in Connection with the *Latitude 30* Action

68.     Navigators realleges and incorporates by reference the allegations of paragraphs 1 through 67 as if fully set forth in this Count III.

69.     Because there is no defense or indemnity coverage for the *Latitude 30* action, any **claim expenses** advanced under the Policy in connection with the *Latitude 30* action constitute unjust enrichment to which neither Baylor nor the Firm are entitled.

70.     Navigators is therefore entitled to a money judgment in the amount of **claim expenses** that were or will be unjustly received by Baylor and the Firm in connection with the *Latitude 30* action.

## PRAYER FOR RELIEF

WHEREFORE, Navigators respectfully requests:

A.     As to Count I, that the Court declare that coverage for the Underlying Actions under the Policy is precluded by the Exclusion K.

B.     As to Count II, that the Court declare that the SEC action, as to Jackson, seeks only the restitution of ill-gotten gains, a form of relief that does not constitute **damages** under the Policy and that is not insurable, and that, as a consequence, the Policy affords no coverage for, and there is no duty to defend, the SEC action as to Jackson.

C.     As to Count III, that the Court award Navigators a money judgment against Baylor and the Firm in the amount of any and all **claim expenses** paid by Navigators in connection with the *Latitude 30* action.

D.     That the Court award Navigators such other and further relief as it may deem appropriate.

Dated: February 13, 2012

Respectfully submitted,

By: _____

Richard A. Simpson (D.C. Bar No. 411893)
Marc E. Rindner (D.C. Bar No. 461250)
WILEY REIN LLP
1776 K Street NW
Washington, D.C.  20006
(202) 719-7000
(202) 719-7049 (facsimile)
E-mails:  rsimpson@wileyrein.com
                mrindner@wileyrein.com

*Counsel for Navigators Insurance Company*